# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ANGELA STILES, O/B/O B.B.**                                                **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 3:19-CV-292-HTW-JCG**

**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Angela Stiles, on behalf of B.B., seeks judicial review of the decision of the Commissioner of the Social Security Administration denying B.B.'s claim for supplemental security income. The Commissioner found that B.B. was not disabled, as defined by the Social Security Act, despite his severe impairment of unspecified intellectual disorder. Plaintiff has filed a Motion for Summary Judgment (ECF No. 10) and a Memorandum in Support (ECF No. 11). The Commissioner has filed a Motion to Affirm (ECF No. 12) and a Memorandum in Support of the Motion to Affirm and in Opposition to Plaintiff's Motion for Summary Judgment (ECF Nos. 13 & 14). Plaintiff has filed a Rebuttal (ECF No. 15). Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied and Commissioner's Motion to Affirm be granted.

## I. Background

### A. Procedural Background

B.B. was born on August 17, 2001. Therefore, he was ten years old on the alleged onset date and seventeen years old at the time of the ALJ's decision.

Through his mother, he filed a Title XVI application for supplemental security income on August 14, 2012, with an alleged onset date of August 2, 2012. ECF No. 9 at 115. B.B.'s claim was initially denied on October 22, 2012 and upon reconsideration on November 1, 2012. *Id.* at 80 & 87. B.B. filed his request for a hearing before an ALJ on December 18, 2012. *Id.* at 92. ALJ Eirleen E. Brown originally heard the case on May 8, 2014 via video hearing, and she issued a decision unfavorable to B.B. on September 10, 2014. *Id.* at 12-28 & 50. The Appeals Council denied his request for review on January 6, 2016. *Id.* at 6-8. However, Plaintiff appealed to this Court on February 12, 2016. *Id.* at 456-58. The Court remanded the case on July 31, 2017. *Id.* at 460-68. ALJ Felicia Burkes conducted a second hearing on June 7, 2018 in Meridian, Mississippi. *Id.* at 391-430. She heard testimony from B.B. and from Plaintiff. She issued a decision unfavorable to B.B. on September 19, 2018. *Id.* at 319-50.

  B. <u>The ALJ's Findings</u>

In determining disability for children, the Commissioner, through the ALJ, works through a three-step sequential evaluation process. See 20 C.F.R § 416.924. First, the ALJ determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the claimant is not engaged in substantial gainful activity, the ALJ moves to step two and determines whether the child suffers from a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. 416.924(c). At step three, the ALJ determines whether the child's impairment meets, medically equals, or functionally equals one of the impairments

listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. 20 C.F.R. § 416.924(d).

In determining whether an impairment or combination of impairments functionally equal the listings, the ALJ must conduct an assessment of the child's functioning with respect to six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. An ALJ will make a finding of functional equivalence only if the child has "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A marked limitation will seriously interfere with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation will interfere "very seriously" with these abilities. 20 C.F.R. 416.926a(e)(3). When deciding whether a child has such a limitation, the ALJ must consider all of the child's impairments, whether or not they are considered severe, as well as the interactive and cumulative effects of any impairments on any affected domain. 20 C.F.R. § 416.926a(a) & (c).

In the instant case, the ALJ found at step one that B.B. had not engaged in any substantial gainful activity. ECF No. 9 at 322. At step two, the ALJ found that B.B. had a severe impairment of unspecified intellectual disorder while his asthma and obesity were non-severe. *Id.* at 322-23. At step three, the ALJ found that B.B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of

20 C.F.R. § 404. *Id.* at 323. The ALJ specifically considered listing 112.05, Intellectual Disorder, and listing 112.11, Neurodevelopmental Disorders. *Id.* at 323-24. The ALJ also found that B.B. did not have an impairment or combination of impairments that functionally equaled the severity of the listings, finding that he had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. *Id.* at 331-49.

B.B. requested review of the ALJ's decision by the Appeals Council on October 1, 2018. *Id.* at 525. The Appeals Council denied his request on March 22, 2019, thereby rendering the ALJ's decisions the final decision of the Commissioner. *Id.* at 307-311. Having exhausted administrative remedies, Plaintiff commenced the present action on behalf of B.B. on April 29, 2019. ECF No. 1.

## II. Standard of Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, even if it finds that the evidence "preponderates" against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell*, 862 F.2d at 475).

### III. Discussion

Plaintiff alleges three assignments of error: (1) the ALJ did not apply the correct legal standard in evaluating listing 112.05; (2) the ALJ's functional equivalence findings are not supported by substantial evidence; and (3) the ALJ's step two finding fails to account for the medically determinable impairment of specific learning disability in reading and math. ECF No. 11.

A. <u>Listing 112.05</u>

Originally, Plaintiff argued that listing 112.05 was revised in 2016 and the revised version only applied to cases filed after January 17, 2017. Therefore, because Plaintiff originally filed B.B.'s application in 2012, the ALJ should have

used the previous version. ECF No. 11 at 11-18. However, Plaintiff concedes in her Rebuttal that the ALJ applied the correct version of the listing. ECF No. 15 at 3. Nevertheless, Plaintiff maintains that the ALJ erroneously relied on 2012 IQ testing conduct by Gail Courts, a psychometrist, that was not countersigned by a qualified specialist. ECF No. 11 at 18-19; ECF No. 15 at 3-4.

As noted by the ALJ, listing 112.05 requires "subaverage general intellectual functioning," which can be evidenced by an IQ score of 70 or below and "significant deficits in adaptive functioning," which can be demonstrated by extreme limitations in one or marked limitations in two of the following areas: (a) understanding, remembering, and applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting and managing oneself. ECF No. 9 at 323-24.

B.B. received a Composite Intelligence Score of 88 on the Reynolds Intellectual Assessment Scales (RIAS) administered by Courts in 2012. *Id.* at 143-44. In 2014, when tested by Criss Lott, his IQ was 65. *Id.* at 301-02. Finally, he received an IQ score of 62 when tested by J. Morris Alexander in 2017. *Id.* at 629. Plaintiff argues that the ALJ should not have used the 2012 score to question the validity of the other two scores because as a psychometrist, Courts is not an acceptable medical source.

However, other courts have noted some disagreement over this proposition. *Hardway v. Colvin*, No. 2:14-cv-7339, 2015 WL 1057926, at *24 (S.D.W. Va. Mar. 10, 2015) (collecting cases); *see also T.R.C. v. Astrue*, No. 2:12-cv-3494-AKK, 2013

6

WL 1834306, at *5 (N.D. Ala. Apr. 30, 2013) (holding that although the school psychometrist's opinion was entitled to little weight because it was inconsistent with her findings, the "ALJ must consider the opinions of '[l]icensed or certified psychologists[,] [i]nclud[ing] school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only'").

Even if the ALJ should not have considered the 2012 IQ score in determining whether B.B. satisfied the first criteria of Listing 112.05(B), Plaintiff has failed to show prejudice from the error. *See Avery v. Colvin*, 605 Fed. App'x 278, 284 (5th Cir. 2015) (citing *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)) (the claimant must show prejudice resulted from the error). Despite finding it "unclear" whether B.B. met the first requirement of the listing, the ALJ went on to analyze whether he had limitations in each of the four areas of mental function. ECF No. 9 at 326-31.

An ALJ may rely on various pieces of evidence to determine a claimant's adaptive functioning under the second part of 112.05(B), such as medical sources, standardized tests, third party information, school records, teacher questionnaires, reports from employers or supervisors, and the claimant's own statements. *See* 112.00(H)(3)(b). Even if Courts cannot be considered an acceptable medical source, her opinions are part of B.B.'s school records. An ALJ may rely on school records in determining a claimant's adaptive functioning under the listing, and Plaintiff does

7

not make any arguments concerning B.B.'s adaptive function in this first assignment of error. Therefore, Plaintiff has not met her burden of showing that B.B.'s impairments met or equaled listing 112.05. *See Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016).

B. <u>Functional Equivalence Findings</u>

In the second assignment of error, Plaintiff argues that the ALJ's functional equivalence findings in the domains of acquiring and using information, interacting and relating with others, and attending and completing tasks are not supported by substantial evidence. ECF No. 11 at 18-21. In particular, Plaintiff takes issue with the ALJ's reliance on both the 2012 score, as discussed above, and the lack of effort indicated in B.B.'s school records. *Id.* at 18. Plaintiff attempts to characterize B.B.'s lack of motivation as a "symptom of his learning and intellectual disability, instead of a cause." *Id.* at 19.

In the domain of acquiring and using information, Plaintiff argues that B.B. has serious deficiencies in reading, has received special education services, failed kindergarten, and needs assistance to complete his classroom work. With respect to interacting and relating with others, Plaintiff argues that the notations of being disrespectful, impulsive, and disruptive and his altercations with other students support at least a marked limitation in this domain. Finally, in the domain of attending and completing tasks, Plaintiff relies on findings of an extremely low working memory score and difficulties in carrying out instructions and completing tasks to argue B.B. has a marked limitation. Commissioner argues that this is

merely an attempt to have this Court reweigh the evidence.

Ultimately, "the responsibility for deciding functional equivalence rests with the [ALJ]." 20 C.F.R. § 416.926a(n). Courts may not reweigh the evidence. *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Therefore, as long as there is substantial evidence supporting the ALJ's decision with respect to these three domains, it must be affirmed. Even if Plaintiff can "make reasonable arguments that the evidence should have been assessed differently in the first instance, . . . those arguments are beyond the limited role of the court in the review process." *Lee v. Comm'r*, No. 11-cv-910, 2013 WL 639060, at *4 (W.D. La. Jan. 29, 2013), *report and recommendation adopted*, No. 11-cv-910, 2013 WL 639058, at *1 (W.D. La. Feb. 21, 2013).

    1. <u>Acquiring and Using Information</u>

In the domain of acquiring and using information, an ALJ should consider how well a claimant acquires or learns information and how well he uses that information. 20 C.F.R. § 416.926a(g). In this case, the ALJ found that B.B. had a less than marked limitation in acquiring and using information. In 2011, his teacher, who stated she had seen B.B. in everyday for a year, indicated he had no problems in acquiring and using information. ECF No. 9 at 123-24. His Leake Central Elementary Determination of Eligibility Report from 2012 indicated he had a learning disability for basic reading skills, but in the test administered by Courts, as discussed above, B.B. had a composite intelligence score of 88. This score was only .80 standard deviations below the mean. *Id.* at 138-44. Granted, his teacher in

2012 indicated B.B. had problems in acquiring and using information, noting that tests are read to him and he struggled with comprehension. However, she also noted that he improved when given one-on-one help and indicated she had only known B.B. for two months. *Id.* at 170-71. James Herzog and Lisa Yazdani, state agency consultants, each indicated in 2012 that B.B. had less than marked limitations in acquiring and using information. *Id.* at 275-277 & 287-89.

In his IEP for the 2013-2014 school year, it was noted that although B.B. struggled with reading comprehension, he could recognize fact from fantasy, utilize picture and context clues, follow oral directions, write and recognize statement and question sentences, and express himself. *Id.* at 191. His 2015-2016 IEP indicates that his academic disability impacted his performance, but he had made progress towards his independent reading goal. *Id.* at 560. He also was making sufficient progress towards his math and reading goals in October of 2015 and January of 2016. *Id.* at 561, 563, 565, & 567. He met his 2016-2017 IEP goals in reading and math. *Id.* at 621-22. In his 2016-2017 and 2017-2018 IEPs, although he continued to have problems with his reading deficit, his low reading scores were attributed in part to his "non-motivation." *Id.* at 534 & 601. His IEPs from 2015 to 2018 all include notations that he could improve and make progress if he put forth the effort. *Id.* 545, 574, & 601. At the hearing, B.B. testified that he was going into eleventh grade, and although his grades were low, he had passed. *Id.* at 396.

Although B.B. clearly has some difficulties in this area, there is sufficient information to support the ALJ's determination that he does not have a marked

limitation. As indicated by his IEPs, his teachers believed he was capable of performing in school, and he made progress towards his goals. Therefore, the ALJ's decision in the domain of acquiring and using information is supported by substantial evidence.

### 2. Interacting and Relating with Others

In the domain of interacting and relating with others, the ALJ should consider a claimant's ability to initiate and sustain emotional connections, develop and use the language of the community, cooperate with others, follow rules, respond to criticism, and respect others' possessions. 20 C.F.R. § 416.926a(i). Here, the ALJ found that B.B. had less than marked limitations. His teacher indicated in 2011 that B.B. had no problems in interacting and relating with others. *Id.* at 123-26. His 2012 teacher indicated he did have problems in this domain, but of the thirteen areas she was questioned about, she noted slight problems in five areas and only one obvious problem. *Id.* at 173. Plaintiff indicated in a 2012 function report that B.B. was capable of talking with family and friends, was capable of making friends, and generally got along with adults, including his teachers. *Id.* at 150-53. Herzog and Yazdani each found no limitations in interacting and relating with others in 2012. *Id.* at 277 & 289. When tested by Lott in 2014, Plaintiff indicated that B.B. enjoyed spending time with friends and family and could even stay overnight with friends, while Lott indicated that B.B. should not "have any difficulty interacting with others appropriately at school." *Id.* at 300-02. When tested by Alexander in 2017, he noted that the behavior issues had subsided for that school year. *Id.* at 627.

His 2013-2014 and his 2015-2016 IEPs indicated that he worked well in small groups. *Id.* at 191 & 560. In 2015-2016, 2016-2017, and 2017-2018, he was described as a "very social person" and a "very friendly young man" who "loves to spend time with his friends." *Id.* at 534, 560 & 601. Nevertheless, his 2016-2017 and 2017-2018 IEPs noted that he was sometimes disruptive or displayed disrespect and impulsivity. *Id.* 534 & 623. His 2016-2017 IEP included some behavior objectives, and he met his goal for one of them. It indicated he needed more time to meet the other goals due to the late start. *Id.* at 623. B.B. did have some discipline issues, such as excessive talking and eating in class in 2013 and disrupting class and throwing things on the bus in 2014. *Id.* at 213-15, 217. He was also involved in a fight in 2013. *Id.* at 216. In 2017, he received a "sagging violation," was disruptive and defiant, threw paper across the room, left class without permission and skipped class, and instigated a fight *Id.* at 547-57. At the hearing, B.B. testified that his behavior had improved. *Id.* at 410-11.

Despite some behavior issues at school, there is clearly substantial evidence supporting the ALJ's determination that B.B. has less than marked limitations in this domain. B.B. interacts with peers in everyday situations, can communicate with his peers and adults, and has worked on improving his behavior at school.

    3. <u>Attending and Completing Tasks</u>

In the final domain at issue, an ALJ should consider how well a claimant is able to focus and maintain attention, how well he can begin, carry through, and finish activities, the pace at which the claimant performs, and the ease with which

the claimant can change activities. 20 C.F.R. § 416.926a(h). The ALJ in this case determined that B.B. had less than a marked limitation in the domain of attending and completing tasks. In 2011, his teacher indicated he had no problems in attending and completing tasks. *Id.* at 123-25. His teacher in 2012 did note some issues in this area, but as discussed above, she had only known B.B. for two months. She indicated he had a very serious problem in four areas and a serious problem in two others. *Id.* at 170-72. Although Plaintiff indicated in 2012 that B.B. had some trouble keeping busy and finishing things, she also noted that he completed his homework and chores most of the time. *Id.* at 155. However, Herzog and Yazdani indicated that B.B. had a marked limitation in this domain in 2012. *Id.* at 277 & 289. The ALJ also considered the IEPs from B.B.'s school records, and she placed significant emphasis on the annotations describing B.B.'s lack of motivation when evaluating this domain. She also considered his testimony about feeding the dog, taking out the trash, cutting the grass, making basic meals or snacks, being able to drive, and cutting hair. *Id.* at 404-07 & 411-13.

      The undersigned acknowledges that B.B.'s degree of limitation in this domain is a much closer call than the other two domains. However, the evidence describing B.B.'s ability to complete tasks outside of school supports the ALJ's decision. Additionally, it appears that his teachers believed he was capable of attending and completing tasks in school, but he was unwilling to put forth the effort. Nevertheless, even if the ALJ would have found that B.B. had a marked limitation in this domain, functional equivalence requires marked limitations in at least two

domains. *See* 20 C.F.R. § 416.926a(d). Therefore, the ALJ's determination that B.B. did not have an impairment or combination of impairments that functionally equaled the listings is supported by substantial evidence.

C. <u>Medically Determinable Impairment</u>

In the final assignment of error, Plaintiff argues that the ALJ erred at step two, as she found only a severe impairment of unspecified intellectual disorder and did not account for the impairment of specific learning disability in reading and math. ECF No. 11 at 21-22. Commissioner argues that because the ALJ found one severe impairment, continued to step three, and considered all impairments at step three, Plaintiff cannot show prejudice. ECF No. 13 at 11.

Only one severe impairment is required to proceed past step two of the disability analysis. 20 C.F.R. 416.924(c). Once the ALJ found that B.B.'s unspecified intellectual disorder was a severe impairment, the ALJ continued with her analysis. Plaintiff acknowledges the fact that the ALJ considered Lott's diagnosis of specific learning disability in reading and math. ECF No. 11 at 21-22. In fact, the ALJ considered the diagnosis in determining whether B.B. satisfied the listing criteria and whether his impairments were functionally equivalent to the listings. ECF No. 9 at 325, 327, 333, 338-39, & 341. When an ALJ specifically considers all claimed impairments, the ALJ's failure to include the impairment as severe at step two does not warrant remand. *Dise v. Colvin*, 630 Fed. App'x 322, 324 (5th Cir. 2015); *see also Locure v. Colvin*, No. 14-1318, 2015 WL 1505903, at *5-6 (E.D. La. Apr. 1, 2015) (collecting cases). Given the ALJ's discussion of B.B.'s specific learning disability in

14

the context of step three, Plaintiff's argument concerning this assignment of error is without merit.

## IV. Recommendation

Based on the above analysis, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied and Commissioner's Motion to Affirm be granted.

## V. Notice of the Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 10th day of January, 2020.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE